*An appropriate order will be issued.*

THEODOROS STAMOS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3096-77, 8574-77,     Filed December 30, 1986.
8299-78, 6238-79.

*Arthur Richenthal*, for the petitioner.
*George W. Connelly, Jr.*, for the respondent.

OPINION

SWIFT, *Judge*: This matter is before the Court on petitioner's motion for summary judgment and respondent's motion for partial summary judgment filed pursuant to Rule 121, Tax Court Rules of Practice and Procedure. At issue are excise taxes and additions to tax in excess of $23 million.

The issues in this case arise out of the widely publicized and much litigated Estate of Mark Rothko (hereinafter sometimes referred to as the estate). Our recently filed opinion in *Estate of Reis v. Commissioner*, 87 T.C. 1016 (1986), also involved the Estate of Mark Rothko, excise taxes imposed by respondent on one of the other executors of the Mark Rothko estate, and cross-motions for summary

judgment which raised arguments very similar to those raised herein.

Mark Rothko was a well-known American abstract expressionist painter who died in 1970. Petitioner Theodoros Stamos, also an artist, was one of the executors of the estate. Petitioner also served as one of the directors of the Mark Rothko Foundation (the foundation), which was established by Mark Rothko in 1967. In his will, after making certain specific bequests to family members, Mark Rothko bequeathed all of his remaining property to the foundation.

In May of 1970, shortly after Mark Rothko's death, the executors of the estate, including petitioner, entered into contracts on behalf of the estate with the Marlborough Gallery, Inc. (the gallery), under which the paintings of Mark Rothko (which comprised the bulk of the estate's assets) could be sold only by the gallery or its affiliated corporations, offices of which were located throughout the world. The contracts were to last 12 years, and the gallery was to receive a commission of 50 percent of the proceeds from the sale of each painting.

Also in May of 1970, the gallery purchased a painting by petitioner at an auction for $4,000. In January of 1971, petitioner contractually permitted the gallery to serve as the exclusive agent for the sale of his paintings for a 4-year period.

In New York State courts, the surviving members of Mark Rothko's family sued the estate, the executors thereof (including petitioner), and the gallery. The foundation intervened and became a party to the State court proceedings. The litigation, insofar as pertinent to the motions before us, sought to void the 12-year exclusive sales contract between the estate and the gallery, to remove petitioner as an executor of the estate, and to recover monetary damages. Much of the legal relief sought by the surviving family of Mark Rothko was granted by the New York State courts. Petitioner and the other executors of the estate were removed, the contract with the gallery was voided, and monetary damages were awarded to the estate.

The New York litigation did not go unnoticed by the Internal Revenue Service. Respondent's representatives audited the foundation and determined that petitioner was

liable for various self-dealing excise taxes under section 4941[1] for the years 1970 through 1976 in the total amount of $19,407,500, and additions to tax under sections 6651(a)(1) and 6684 for the same years in the respective total amounts of $724,375 and $2,957,500.

## Petitioner's Motion for Summary Judgment

Petitioner's motion for summary judgment herein is based on three alternative arguments: (1) That section 4941(d)(1)(E) and the related provisions are so vague and imprecise that they are unconstitutional and void; (2) that the assets of the Estate of Mark Rothko were separate and distinct from the assets of the foundation and therefore, that any improper, non-arm's-length conduct that occurred in administering the assets of the estate do not also constitute self-dealing in the use of the assets of the foundation; and (3) that whatever misuse of the assets of the foundation may have occurred, under the undisputed facts of this case, such misuse did not constitute self-dealing by petitioner because the assets of the foundation were not used for the benefit of or transferred to petitioner. Each of these arguments was addressed in *Estate of Reis v. Commissioner, supra,* and either was resolved against Reis' estate in favor of respondent or was considered not ripe for disposition by way of summary judgment. Our resolution of these issues in *Estate of Reis* controls our resolution of these issues herein. We therefore deny petitioner's motion for summary judgment.

## Respondent's Motion for Partial Summary Judgment

Respondent's motion for partial summary judgment is based on his contention that there is no factual dispute herein and that respondent is entitled to summary judgment on the issue of whether petitioner Theodoros Stamos committed "acts of self-dealing" under section 4941. Respondent argues that the acts of self-dealing are established by: (1) Certain findings made by the New York State courts in the litigation concerning the Estate of Mark Rothko; (2)

---

[1] All section references are to the Internal Revenue Code of 1954 as in effect during the years in issue.

stipulated facts herein concerning the purchase by the gallery of one of petitioner's paintings; and (3) stipulated facts herein concerning the agency relationship between the gallery and petitioner for the sale of petitioner's paintings.

### Findings of New York State Courts

With regard to the opinions of the New York State courts (citations to which are found in our opinion in *Estate of Reis v. Commissioner, supra*), respondent argues that under the principle of judicial notice set forth in rule 201 of the Federal Rules of Evidence, we are entitled to find as facts herein the findings of fact reflected in the opinions of the New York State courts in the litigation concerning the Estate of Mark Rothko. We concluded in *Estate of Reis*, that a proper application of judicial notice will not allow us herein to make findings of fact in this Court based on findings of fact made in the referenced New York litigation, and our decision in *Estate of Reis* is controlling herein on that argument.

Also with respect to the opinions of the New York State courts in the litigation concerning the Estate of Mark Rothko and independently of the principle of judicial notice, respondent argues that the findings of fact of the New York State courts have been stipulated to as facts herein. Respondent's argument is based on the language of paragraph 8 of the stipulation of facts filed in this case. After setting forth the citations to the various New York State court opinions, paragraph 8 of the stipulation reads as follows:

To the extent the parties consider the circumstances, findings or holdings of those proceedings relevant to the issues in these cases, they have made them a part of the Stipulation.

Generally, a stipulation of fact is controlling on the parties, and the Court is bound to enforce it. Rule 91, Tax Court Rules of Practice and Procedure. Rule 91 provides in part as follows:

(e) Binding Effect: A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties. The Court will not permit a party to a stipulation to qualify, change, or

contradict a stipulation in whole or in part, except that it may do so where justice requires. * * *

Stipulations that specific evidence will not be introduced into evidence are valid. *Blum v. Morgan Guaranty & Trust Co. of New York*, 709 F.2d 1463, 1465 (11th Cir. 1983); *United States v. Cale*, 508 F. Supp. 1038, 1043-1044 (S.D. N.Y. 1981). Stipulations on legal issues such as the admissibility of evidence, however, are uniquely within the province of the Court to determine and are not binding on the Court. *United States v. Dyer*, 752 F.2d 591, 595 (11th Cir. 1985); *Fisher v. First Stamford Bank & Trust Co.*, 751 F.2d 519, 523 (2d Cir. 1984); *Noel Shows, Inc. v. United States*, 721 F.2d 327, 330 (11th Cir. 1983); *King v. United States*, 641 F.2d 253, 258 (5th Cir. 1981); *United States v. Waterman S.S. Corp.*, 397 F.2d 577, 579 (5th Cir. 1968); *Drasner v. Thomson McKinnon Securities, Inc.*, 433 F. Supp. 485, 490 (S.D. N.Y. 1977).

Stipulations, like contracts, bind parties only to the terms actually agreed upon. *United States v. McKinney*, 758 F.2d 1036, 1047 (5th Cir. 1985); *Rice v. Glad Hands, Inc.*, 750 F.2d 434, 438 (5th Cir. 1985). The interpretation of a stipulation primarily is determined by ascertaining the intent of the parties, and such intent is a question of fact. *WO Co. v. Benjamin Franklin Corp.*, 562 F.2d 1339, 1344 (1st Cir. 1977); *Stella v. DePaul Community Health Center*, 487 F. Supp. 1017, 1020 (E.D. Mo. 1980), affd. 642 F.2d 258 (8th Cir. 1981).

The language of a stipulation is to be construed pursuant to rules applicable to the construction of contracts. *In re Neuman*, 55 Bankr. 702, 705 (S.D. N.Y. 1985); *In re Bolton Hall Nursing Home*, 31 Bankr. 765, 769 (Bankr. D. Mass. 1980); *Nishman v. DeMarco*, 76 App. Div. 2d 360, 430 N.Y.S.2d 339, 344 (1980). Where language in a stipulation is so ambiguous that the intent of the parties cannot be discerned, the language in question will be disregarded, and the Court will not construe a stipulation to exist where the parties have not clearly set forth the substance of what they have agreed to. Cf. *National Audubon Society, Inc. v. Watt*, 678 F.2d 299, 306-307 (D.C. Cir. 1982); *New Educational Development Systems, Inc. v. Boitano*, 573 F. Supp.

594, 596-597 (N.D. Cal. 1983); *Mann v. Fender*, 587 S.W.2d 188, 202 (Tex. Civ. App. 1979).

We reiterate and emphasize what previously has been said concerning the stipulation process—

Economy of the time of both litigants and courts is greatly favored, and no more useful device is found than the stipulation which agrees to the existence of material and relevant facts concerning which there is no dispute, thus avoiding time-consuming and unnecessary presentation of proof. * * * The stipulation is to be encouraged as an efficient means of presenting evidence * * * [*Insurance Co. of No. Amer. v. Northwestern Nat. Ins. Co.*, 494 F.2d 1192, 1196 (6th Cir. 1974).]

Applying the above principles to respondent's argument, it can only be concluded that the language in question from the stipulation filed herein is so ambiguous and indefinite that it does not constitute a stipulation at all. Perhaps it represents an agreement between the parties to attempt to agree later, but certainly it cannot fairly be read to constitute a present agreement that the findings of the New York State courts are to be regarded as stipulated facts in this case.

The major problem with respondent's argument pertaining to the above language of the stipulation centers on the following phrase from paragraph 8 of the stipulation: "To the extent the parties consider the circumstances, findings, or holdings * * * relevant." We simply do not know the answer to the question implicitly raised by that language— namely, to *what* extent did or do the parties consider the circumstances, findings, or holdings of the New York State court opinions relevant to these proceedings. Based on the conditional language of the stipulation, the parties themselves must yet agree on that point before the remaining language of that sentence of paragraph 8 of the stipulation becomes operative.

If the parties had left the question of relevancy to the Court (as is normally done) and merely stipulated to the findings of the New York State courts without any further conditions, we would consider those findings to have been fully stipulated herein. We would determine the relevancy of those findings and make our findings accordingly.[2] Our

---

[2] Where parties to a Federal court proceeding stipulate that findings of a State court will be part of the record in the Federal court proceeding, such findings of the State court may serve

best reading of the stipulation, however, suggests that the parties conditioned their stipulation or agreement on this point upon a further stipulation as to the relevancy of the findings of the New York State courts. Because no such further stipulation occurred, the language in question is meaningless, and the Court must disregard it.

In light of the ambiguous and conditional nature of the language of paragraph 8 of the stipulation, we find that the parties herein have not stipulated that the findings of fact contained in the New York State court opinions concerning the Estate of Mark Rothko are facts upon which we may base our findings in this proceeding.

*Purchase of Petitioner's Painting and Agency Contract with the Marlborough Gallery*

Respondent also moves for partial summary judgment on the grounds that, as a matter of law, the purchase by the gallery of a painting by petitioner and the presence of the exclusive agency contract petitioner entered into with the gallery constitute acts of self-dealing. Respondent has not referred us to any particular provision of section 4941(d)(1) that would support such a holding,[3] and we have not identified one. The provisions of section 4941(d)(1)(A) through (E) pertain to transactions between a disqualified

---

as the basis for the Federal court's decision. *Hagan v. California,* 265 F. Supp. 174, 175 (C.D. Cal. 1967).

[3] Sec. 4941(d)(1) provides as follows:

SEC. 4941(d). SELF-DEALING.—

(1) IN GENERAL.—For purposes of this section, the term "self-dealing" means any direct or indirect—

(A) sale or exchange, or leasing, of property between a private foundation and a disqualified person;

(B) lending of money or other extension of credit between a private foundation and a disqualified person;

(C) furnishing of goods, services, or facilities between a private foundation and a disqualified person;

(D) payment of compensation (or payment or reimbursement of expenses) by a private foundation to a disqualified person;

(E) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a private foundation; and

(F) agreement by a private foundation to make any payment of money or other property to a government official (as defined in section 4946(c)), other than an agreement to employ such individual for any period after the termination of his government service if such individual is terminating his government service within a 90-day period.

person and a private foundation, and the provisions of section 4941(d)(1)(F) pertain to transactions between a private foundation and a Government official. The sale by petitioner of one of his paintings to the gallery, and the agency contract between petitioner and the gallery, do not appear to be the types of transactions described in section 4941(d)(1).

For the reasons stated above, petitioner's motion for summary judgment and respondent's motion for partial summary judgment will be denied.

*Appropriate orders will be issued.*

