MARVIN L. WARNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Warner v. Commissioner
Docket No. 5638-90
United States Tax Court
T.C. Memo 1993-235; 1993 Tax Ct. Memo LEXIS 233; 65 T.C.M. (CCH) 2802; May 25, 1993, Filed *233 Decision will be entered under Rule 155. For petitioner: Scott Alan Orth, Marvin C. Gutter, Richard A. Josepher, and Thomas Ruffin III. For respondent: Nancy B. Herbert. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1975
$ 22,860
-- --
1976
932,544
-- --
1977
458,604
-- --
1979
312,879
-- --
1980
315,043
-- --
1983
167,894
$ 8,395
50 percent of
the interest
on $ 141,340
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues for decision are: (1) Whether petitioner should be relieved from the stipulation of the parties concerning the balance, as of December 31, 1975, in petitioner's excess deductions account (EDA) under section 1251; (2) whether a subtraction from the EDA is made under section 1251(b)(3)(B) for the amount of gain petitioner *234 realized on the disposition of farm recapture property that is recaptured as ordinary income under section 1245; and (3) whether certain horses sold by petitioner during 1976 through 1983 that were not farm recapture property as of December 31, 1975, are farm recapture property under section 1251. FINDINGS OF FACT All of the facts have been stipulated, and the stipulated facts are incorporated as our findings by this reference. As of the time his petition was filed, petitioner resided in Ocala, Florida. From 1970 through 1983, petitioner engaged in the business of owning racehorses and breeding horses. Petitioner deducted substantial farm losses on his income tax returns for those years. On his 1970 through 1975 returns, the farm losses that petitioner reported offset the nonfarm income that he earned. The parties have stipulated that the balance in petitioner's EDA under section 1251, as of December 31, 1975, was $ 4,239,069. Petitioner, on his 1976 through 1983 returns, reported the following farm losses: Year
Farm Loss
1976
($ 1,204,253)
1977
(1,950,160)
1978
(2,796,446)
1979
(2,759,179)
1980
(3,535,571)
1981
(2,312,218)
1982
(4,870,406)
1983
(3,971,871)
*235 From 1976 through 1983, petitioner realized gains from sales of a number of horses that had been owned by him for at least 2 years. Most, if not all, of the horses sold had been acquired by petitioner after December 31, 1973. OPINION The issues in this case involve the application of former section 1251. Section 1251 was enacted as part of the Tax Reform Act of 1969, Pub. L. 91-172, sec. 211(a), 83 Stat. 566. As enacted by the Tax Reform Act of 1969, section 1251, in pertinent part, provided: SEC. 1251. GAIN FROM DISPOSITION OF PROPERTY USED IN FARMING WHERE FARM LOSSES OFFSET NONFARM INCOME. (a) Circumstances Under Which Section Applies. -- This section shall apply with respect to any taxable year only if -- (1) there is a farm net loss for the taxable year, or (2) there is a balance in the excess deductions account as of the close of the taxable year after applying subsection (b)(3)(A).
(b) Excess Deductions Account. -- (1) Requirement. -- Each taxpayer subject to this section shall, for purposes of this section, establish and maintain an excess deductions account. (2) Additions to account. -- (A) General rule. -- There shall be added to the excess deductions *236 account for each taxable year an amount equal to the farm net loss. (B) Exceptions. -- In the case of an individual (other than a trust) and, except as provided in this subparagraph, in the case of an electing small business corporation (as defined in section 1371(b)), subparagraph (A) shall apply for a taxable year -- (i) only if the taxpayer's nonfarm adjusted gross income for such year exceeds $ 50,000, and (ii) only to the extent the taxpayer's farm net loss for such year exceeds $ 25,000. * * * (3) Subtractions from account. -- If there is any amount in the excess deductions account at the close of any taxable year (determined before any amount is subtracted under this paragraph for such year) there shall be subtracted from the account -- (A) an amount equal to the farm net income for such year, plus the amount (determined as provided in regulations prescribed by the Secretary or his delegate) necessary to adjust the account for deductions which did not result in a reduction of the taxpayer's tax under this subtitle for the taxable year or any preceding taxable year, and (B) after applying paragraph (2) or subparagraph (A) of this paragraph (as the case may be), an amount *237 equal to the sum of the amounts treated, solely by reason of the application of subsection (c), as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231. * * *
(c) Ordinary Income. -- (1) General rule. -- Except as otherwise provided in this section, if farm recapture property (as defined in subsection (e)(1)) is disposed of during a taxable year beginning after December 31, 1969, the amount by which -- (A) in the case of a sale, exchange, or involuntary conversion, the amount realized, or (B) in the case of any other disposition, the fair market value of such property, exceeds the adjusted basis of such property shall be treated as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231. Such gain shall be recognized notwithstanding any other provision of this subtitle. (2) Limitation. -- (A) Amount in excess deductions account. -- The aggregate of the amounts treated under paragraph (1) as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231 for any taxable year shall not exceed the amount *238 in the excess deductions account at the close of the taxable year after applying subsection (b)(3)(A). * * *
(e) Definitions. -- For purposes of this section -- (1) Farm recapture property. -- The term "farm recapture property" means -- (A) any property (other than section 1250 property) described in paragraph (1) (relating to business property held for more than 6 months), (3) (relating to livestock), or (4) (relating to an unharvested crop) of section 1231(b) which is or has been used in the trade or business of farming by the taxpayer or by a transferor in a transaction described in subsection (b)(5), and (B) any property the basis of which in the hands of the taxpayer is determined with reference to the adjusted basis of property which was farm recapture property in the hands of the taxpayer within the meaning of subparagraph (A). (2) Farm net loss. -- The term "farm net loss" means the amount by which -- (A) the deductions allowed or allowable by this chapter which are directly connected with the carrying on of the trade or business of farming, exceed (B) the gross income derived from such trade or business. Gains and losses on the disposition of farm recapture *239 property referred to in section 1231(a) (determined without regard to this section or section 1245(a)) shall not be taken into account. (3) Farm net income. -- The term "farm net income" means the amount by which the amount referred to in paragraph (2)(B) exceeds the amount referred to in paragraph (2)(A).
Section 1251 essentially converted capital gains into ordinary income on a taxpayer's disposition of "farm recapture property" to the extent that a taxpayer's farm losses (above certain limitations) had been offset against nonfarm income. Sec. 1251(c). A taxpayer was required to maintain an EDA to record farm losses. Sec. 1251(a), (c). As section 1251 was originally enacted in the Tax Reform Act of 1969, farm losses were added to the EDA only if the taxpayer had more than $ 50,000 of nonfarm adjusted gross income for the year and only to the extent that the taxpayer's farm losses for the year exceeded $ 25,000. Sec. 1251(b)(2)(B). Farm net income (generally determined by not taking into account gains or losses from farm recapture property) for the year was subtracted from the EDA. Sec. 1251(b)(3)(A). Finally, any amounts treated as ordinary income by reason of the *240 application of section 1251(c) were also subtracted from the EDA. Sec. 1251(b)(3)(B). Congress enacted section 1251 to prevent taxpayers who were using the special farming cash method accounting rules (under which they are permitted currently to deduct many expenditures of a capital or inventory-type nature and thereby generate losses that shelter their nonfarm income) from receiving capital gains treatment upon their subsequent sale of certain farm property. Armendaris Corp. v. Commissioner, 72 T.C. 52, 63-66 (1979); H. Rept. 91-413 (1969), 1969-3 C.B. 200, 240-243. The Tax Reform Act of 1976, Pub. L. 94-455, sec. 206(a), 90 Stat. 1535, added section 1251(b)(2)(E), which provided that no additions are made to an EDA for taxable years beginning after December 31, 1975. Section 1251 was subsequently repealed by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 492(a), 98 Stat. 853, for taxable years beginning after December 31, 1983. Relief From Stipulation
Petitioner and respondent stipulated that $ 4,239,069 was the balance in petitioner's EDA, as of December 31, 1975, and is the amount to be used for purposes *241 of determining petitioner's EDA for the years subsequent to 1975. Rule 91 provides, in pertinent part, as follows: (e) Binding Effect: A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties. The Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires. * * *
See Stamos v. Commissioner, 87 T.C. 1451, 1454 (1986). Petitioner, on brief, now requests that the Court disregard the parties' stipulation and find that the balance in petitioner's EDA, as of December 31, 1975, was $ 3,324,984. Petitioner asserts that, under section 1251(b)(2)(B)(i), no addition of any portion of his 1975 net farm loss is made to his EDA, because his nonfarm adjusted gross income for 1975 did not exceed $ 50,000. He contends that the parties' failure properly to take into account the application of section 1251(b)(2)(B)(i) constituted a "mutual mistake of fact and law". Petitioner has failed to establish that the parties' *242 stipulation is in error or to show any ground for relief from the stipulation. In the notice of deficiency, respondent determined that petitioner's revised taxable income for 1975 was ($ 1,773,733). In the computation in his brief of his nonfarm adjusted gross income for 1975, petitioner incorrectly used the ($ 2,220,374) of taxable income that he had originally reported on his 1975 return, rather than the ($ 1,773,733) actually determined in the notice of deficiency. On this record, we can only assume that the amount in the notice of deficiency is correct, subject to agreed adjustments. None of the agreed adjustments supports a reduction of petitioner's nonfarm adjusted gross income below $ 50,000. Subtraction of Section 1245 Recapture Income From the EDA
During the years in issue, where a taxpayer disposed of farm recapture property at a gain, such gain was subject to recapture as ordinary income under section 1251(c) based upon the balance in the taxpayer's EDA. Section 1245 income on the disposition of farm recapture property is to be taken into account in computing a taxpayer's farm net income or farm net loss for a year. Sections 1.1251-1(b)(5), -3(b)(1) and (2), *243 and -3(c), Income Tax Regs., provide, in pertinent part, as follows: Sec. 1.1251-1 General rule for treatment of gain from disposition of property used in farming where farm losses offset nonfarm income. * * * (b) Ordinary income -- * * * * * * (5) Relationship to section 1245. If property is disposed of which qualifies as both section 1245 property (as defined in section 1245(a)(3)) as well as farm recapture property, then gain shall be recognized as ordinary income under section 1251(c)(1) only to the extent that the amount of any gain realized (in the case of a sale, exchange, or involuntary conversion), or to the extent that the excess of the fair market value of the property is over its adjusted basis (in the case of any other disposition), was not recognized as ordinary income under section 1245(a)(1). The amount of gain recognized as ordinary income under section 1245(a)(1) upon a disposition of farm recapture property (i) is taken into account under paragraph (b)(2) of sec. 1.1251-3 for purposes of computing farm net loss (or farm net income) and (ii) is not under paragraph (c)(1)(ii) of sec. 1.1251-2 subtracted from the excess deductions account. * * * Sec. 1.1251-3 *244 Definitions relating to section 1251. * * * (b) Farm net loss -- (1) In general. The term "farm net loss" means the amount by which -- (i) The deductions allowed or allowable for the taxable year by chapter 1 of subtitle A of the Code which are directly connected with the carrying on of the trade or business of farming, exceed (ii) The gross income derived from such trade or business. (2) Disposition of farm recapture property. For purposes of subparagraph (1) of this paragraph, no gain or loss (regardless of how treated) resulting from the disposition of farm recapture property shall be taken into account, except that under subparagraph (1)(ii) of this paragraph gain upon disposition of such property which is recognized as ordinary income by reason of section 1245(a)(1) shall be taken into account. Thus, for example, if land used in the trade or business of farming were disposed of and gain of $ 3,000 was realized, then none of such gain would be taken into account in computing farm net loss and farm net income even if all or a portion of such gain is recognized as ordinary income by reason of section 1251(c)(1), section 1252(a)(1), or both. If such land were disposed of *245 at a loss, the result would be the same. See paragraph (d)(1)(ii) of this section with respect to the exclusion of gain or loss from the disposition of farm recapture property from the computation of nonfarm adjusted gross income. * * * (c) Farm net income. The term "farm net income" means the amount by which the amount referred to in paragraph (b)(1)(ii) of this section exceeds the amount referred to in paragraph (b)(1)(i) of this section.
See also sec. 1.1251-1(b)(6)Example (3), Income Tax Regs.; sec. 1.1251-2(c)(2), Example (2), Income Tax Regs. Petitioner contends that all gains recaptured as ordinary income under section 1245 should be directly subtracted from the EDA under section 1251(b)(3)(B). Petitioner recognizes that the approach he urges is contrary to the applicable regulations. Petitioner argues as follows: Reg. section 1.1251-1(b)(5) provides that * * * [section 1251(b)(3)(B)] reduces EDA only by that amount of gain which remains after section 1245 has been applied. It further provides that section 1245 income is to be taken into account in computing farm net loss or farm net income and therefore reduces EDA under * * * [section 1251(b)(3)(A)] *246 pursuant to the authority of Reg. section 1.1251-3(b)(2). * * * Contrary to the express language of Code section 1251(e)(2)(B), Reg. section 1.1251-3(b)(2) provides that "gain upon disposition of such property which is recognized as ordinary income by reason of section 1245(a)(1)shall be taken into account" for purposes of determining gross income derived from farming. (Emphasis supplied.) Code section 1251(e)(2) (last sentence) provides that for purposes of computing farm gross income gains on the sale of farm recapture property shall be "determined without regard to section 1245(a)" and "shall not be taken into account". (Emphasis supplied.) Stated otherwise, the Code excludes from farm gross income the full portion of section 1231 gains, not merely the portion of such gains which, but for section 1251(c), would be characterized as ordinary income under section 1245(a). Thus, gains subject to recapture under sections 1245(a) and 1251(c) reduce the EDA under section 1251(b)(3)(B) or not at all. They are expressly excluded, by operation of the definition of "farm net income" and "farm net loss", from reduction of the EDA under section 1251(b)(3)(A). * * * Reg. section *247 1.1251-1(b)(5) is contrary to the Code insofar as it includes the described portion of section 1245(a) income in farm gross income and denies the benefit of EDA reduction for post 1975 years. The Court is requested either to apply said regulation so that the EDA is reduced directly first by that portion of the section 1251(c) gain which may also be characterized as ordinary income under section 1245(a) or to declare the subject regulation invalid and interpret * * * [section 1251(b)(3)(B)] as reducing EDA directly by all recaptured income which satisfies the conditions of section 1251(c).
We reject petitioner's contention that a direct subtraction from his EDA is made under section 1251(b)(3)(B) for the amount of gain petitioner realized on the disposition of farm recapture property that is recaptured as ordinary income under section 1245. Section 1251(b)(3) provides for subtractions from a taxpayer's EDA only: (1) Where a taxpayer has farm net income for the year, sec. 1251(b)(3)(A), or (2) where gain is treated as ordinary income solely by reason of section 1251(c), sec. 1251(b)(3)(B). Various commentators noted that applying the statutory language literally could produce *248 a harsh result for taxpayers who disposed of farm recapture property that was also subject to depreciation recapture under section 1245. There could potentially be double recapture under sections 1245 and 1251. Hearings on H.R. 13270 Before the Senate Comm. on Finance, 91st Cong., 1st Sess. 5175 (1969) (Statement of Scott F. Crampton, Chairman, American Bar Association, Section of Taxation); Freeman, "Planning Income Realization Under Section 1251", 53 Taxes 540, 545 (1975); Griffith & Joy, "What the Act does to the Farmer: Farm Parity or Class Discrimination?", 23 Tax Law. 495, 499 (1969); Hjorth, "Farm Losses and Related Provisions", 25 Tax. L. Rev. 581, 596, 597-598 (1970). The situation petitioner finds himself in is not the double recapture problem anticipated by the commentators. By treating section 1245 income as farm income, the regulations remedied the problem of potential double recapture. Section 1245 recapture income could indirectly reduce a taxpayer's EDA, either by way of producing farm net income or by way of reducing the taxpayer's farm net loss for the year that generally would have to be added to the EDA. Because of the large annual *249 farm losses he incurred from 1976 through 1983 and the enactment of section 1251(b)(2)(E), supra p. 8, however, the treatment by the regulations of the section 1245 recapture income as farm income does not actually benefit petitioner by reducing his EDA balance. Although his farm net loss calculated under section 1251 in each post-1975 year is reduced by amounts recaptured under section 1245, no additions are made to his EDA for years after 1975 under section 1251(b)(2)(E). Petitioner seeks to have us interpret section 1251 in a manner that is contrary not only to the regulations but to the express statutory language of section 1251(b)(3)(B). Section 1251(b)(3)(B) provides for subtraction from an EDA of the amount of gain that is treated as ordinary income "solely by reason of" section 1251(c). Even if we held invalid part of the regulations, the express statutory language would still preclude the direct subtraction of the section 1245 income from petitioner's EDA under section 1251(b)(3)(B). In conclusion, we hold that no subtractions from petitioner's EDA are made under section 1251(b)(3)(B) for the section 1245 income realized on petitioner's disposition of farm recapture *250 property. Sec. 1251(b)(3)(B); sec. 1.1251-1(b)(5), Income Tax Regs.
Classification of Horses as Farm Recapture Property
"Farm recapture property" is generally any property described in section 1231(b)(1), (3), or (4) that is or has been used in the business of farming by the taxpayer. Sec. 1251(e)(1); sec. 1.1251-3(a), Income Tax Regs. Horses held by the taxpayer for at least 24 months from the date of acquisition are property described in section 1231(b)(3). Petitioner contends that the horses he sold from 1976 through 1983 that were not "farm recapture property" as of December 31, 1975, should not be classified as "farm recapture property" for purposes of section 1251. He points out that, under section 1251(b)(2)(E), no additions are made to an EDA in taxable years beginning after December 31, 1975. Petitioner argues that it is a "more reasonable approach" to interpret section 1251 to apply only with respect to property sold that was "farm recapture property" in the taxpayer's hands as of December 31, 1975, because, with the enactment of section 1251(b)(2)(E) by the Tax Reform Act of 1976, no additions to the EDA are to be made for years beginning after 1975. He claims *251 further that the Tax Reform Act of 1976 effectively replaced section 1251 with the at-risk rules contained in section 465. According to petitioner, "Property acquired after 1975, or property which at December 31, 1975, was not 'farm recapture property' would not subsequently become 'farm recapture property' and thus become subject to recapture of EDA existing at December 31, 1975." Respondent, on the other hand, contends that no such exception is contained in the statutory definition of "farm recapture property" under section 1251. She further argues that such an exception is contrary to the legislative history of the Tax Reform Act of 1976 concerning the enactment of section 1251(b)(2)(E). We agree with respondent. Neither the statute nor the pertinent legislative history supports petitioner's definition of "farm recapture property". S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 103-104, in pertinent part, states as follows: Explanation of provision
The committee amendment limits the future applicability of the present EDA provision (sec. 1251) by providing that no additions to an excess deductions account need be made for net farm losses *252 sustained in any taxable year beginning after December 31, 1975. Farm losses incurred during any such taxable year or years will instead be governed by other limitations under the committee amendment. If property which is "farm recapture property" (within the meaning of section 1251(e)(1)) is disposed of during a taxable year beginning after December 31, 1975, however, the recapture rules of present law will continue to apply, but only with respect to EDA accounts required to be maintained for one or more years beginning before December 31, 1975. This provision is the same as that in the House bill.
Identical statements are contained in the earlier House report. See H. Rept. 94-658 (1975), 1976-3 C.B. (Vol. 2) 695, 783-785. In effect, petitioner is urging us to imply an unstated exception into the definition of "farm recapture property" that is contrary to the express statutory definition provided in section 1251(e)(1) and to the above legislative history. Petitioner's business deductions from farming for years after 1975 may be subject to limitation under other provisions enacted by the Tax Reform Act of 1976, such as the at-risk provisions *253 of section 465. Nevertheless, gains realized by petitioner on his disposition of "farm recapture property" from 1976 through 1983 are subject to recapture under section 1251. There is potential section 1251 recapture to the extent of the balance in petitioner's EDA as of December 31, 1975, which amount represents the prior benefit petitioner received from the deduction of his pre-1976 excess farm losses against his nonfarm income. Based on the statutory definition of "farm recapture property" provided in section 1251(e)(1) and the legislative history, we reject petitioner's construction of the term "farm recapture property". We conclude that horses held by petitioner for at least 2 years as of the various dates when sold by him during 1976 through 1983 are "farm recapture property" for purposes of section 1251. To reflect the foregoing and the agreement of the parties, Decision will be entered under Rule 155.